# IN THE UNITED STATES DISRTICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LISA MACKEY, | } |
| | } |
|     **Plaintiff,** | } |
| | } |
|     v. | }   Case No.: 4:17-cv-01038-RDP |
| | } |
| NANCY A. BERRYHILL, | } |
| **Commissioner of Social Security,** | } |
| | } |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Lisa Mackey ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"). Plaintiff seeks review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB"). (R. 17). *See also* 42 U.S.C. §§ 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

This action arises from Plaintiff's application for DIB dated March 10, 2014. (R. 136-37). The Social Security Administration ("SSA") initially denied Plaintiff's application on August 15, 2014. (R. 76-81). Plaintiff subsequently requested and received a hearing before Administrative Law Judge Ronald Reeves ("ALJ"). (R. 44, 82). The hearing was held on March 1, 2016 in Gadsden, Alabama where Plaintiff appeared and was represented by an attorney. (R. 44). In his decision dated May 6, 2016, the ALJ determined Plaintiff not disabled under section 216(i) and 223(d) of the Act. (R. 40). Plaintiff requested review of the ALJ's decision on May 23, 2016. (R.

24). The Appeals Council denied Plaintiff's request on April 18, 2017, thereby making the ALJ's determination the final decision of the Commissioner, and a proper subject of this court's appellate review. (R. 1).

## II.   Facts

At the time of the hearing, Plaintiff was fifty-one years old. (R. 64). She completed two years of college and was self-employed as a cosmetologist from 1990 to February 4, 2014. (R. 47, 74, 157, 203). Plaintiff alleges disability beginning on February 4, 2014 due to injuries she received in a motor vehicle accident: bilateral femur fracture, right heel fracture, right knee ligament injury, sternal injury, intestinal lining tears, severe concussion, and right great toe displacement. (R. 8, 64, 81).

In her application for disability benefits, Plaintiff noted that her daily activities include sitting in a recliner and watching TV. (R. 162). She states that because she experiences pain when she lays flat, she must sleep in a recliner. (*Id*.). She reports she is unable to prepare or heat up meals because she cannot stand to reach the microwave. (R. 164). She states she is unable to do any household chores or yard work but is able to go outside once a week and ride in a car. (R. 164-65). She indicates she is also unable to retrieve bills from the mailbox and is afraid to pay bills while on medication. (*Id*.). Her hobbies before the accident included going to her daughter's sporting events and riding jet skis; however, since the accident, she cannot participate in those activities. (R. 166).

Plaintiff told the ALJ that she is unable to walk or stand for long periods of time due to pain in her heel, and that she must sit down and prop her legs up to relieve the pain. (R. 51). She has been prescribed a cane and home therapy exercises. (R. 50, 52).

The record contains Plaintiff's medical history from the alleged onset date of February 4, 2014. (R. 239). She was involved in a significant vehicle accident. Plaintiff was initially taken to Redmond Regional Medical Center after the accident where she was diagnosed with fracture of the manubrium, right transverse processes of L1 through L5 fractured with minimal displacement, calcaneal fracture, closed head injury, contusion of abdominal wall, dislocated toe, right femur fracture, lumbar transverse process fracture, pulmonary contusion, and lacerations. (R. 249, 254). Plaintiff was transferred from Redmond to Erlanger Health System on February 4, 2014. (R. 250).

On February 5, 2014, Dr. Peter Nowotarski preformed multiple procedures on Plaintiff, including intramedullary nailing of the right and left femurs; right and left proximal tibial tractions pins; open reduction internal fixation; right tibial plateau; right knee exam under anesthesia; closed treatment of right calcaneus with manipulation, incision and drainage; and closure of right thigh laceration. (R. 287, 344). After the procedures, Plaintiff was told to be non-weight bearing on her right lower extremity while using the left lower extremity for transfer and pivoting. (R. 290, 348). Plaintiff was transferred to HealthSouth Rehabilitation Hospital of Gadsden on February 11, 2014, where she stayed and completed physical therapy until February 20, 2014. (R. 442-56). Plaintiff missed some scheduled physical therapy sessions. (*Id.*).

Plaintiff returned to Dr. Nowotarski on February 20, 2014. He noted that she had good control of her left leg, straight leg raise, and no pain with axial loading with pushing off her left leg. (R. 326). She was able to extend and flex her hip and left knee near fully. (*Id.*). The right knee was able to flex up to about 70-80 degrees. (*Id.*). Dr. Nowotarski stated that there was reduction and fixation of Plaintiff's bilateral femoral shaft fractures. (R. 327).

On February 21, 2014, Plaintiff underwent another procedure on her fractured calcaneus and was told to be non-weight-bearing for three months on her right lower extremity and to elevate

her leg. (R. 328-32). Plaintiff was transferred back to HealthSouth Rehabilitation on February 24, 2014 and was released on March 7, 2014. (R. 415-29). On March 6, 2014, Dr. Nowotarski instructed Plaintiff to weight bear as tolerable on left lower extremity for short distances with a walker and to remain non-weight bearing on her right side. (R. 279).

On March 21, 2014, Plaintiff visited Dr. Brian Perry. Dr. Perry noted that Plaintiff appeared to be recovering steadily. (R. 313). During an April 10, 2014 examination by Dr. Nowotarski, he noted that Plaintiff's right knee had about 90-95 degrees of knee flexion and her calcaneal wound had perfectly healed with reduction in the right calcaneus fracture. (R. 409). Dr. Nowotarski also noted that Plaintiff was giving poor rehab effort and prescribed her more vigorous physical therapy. (*Id.*). Dr. Nowotarski cleared Plaintiff for full weight bearing gait training on her left femur as well as twenty-five-pound toe touch on the right side. (*Id.*).

During a follow up visit to Dr. Nowotarski on May 15, 2014, Plaintiff reported ambulating around the house with a walker on her left leg without problems. (R. 491). He also noted that Plaintiff had no tenderness in left femoral shaft fracture, full knee extension and flexion, and no pain through weight bearing on the left foot. (*Id.*). Dr. Nowotarski progressed Plaintiff to full weight bearing as tolerated on her right foot, moved her from a walker to a cane, and prescribed six to eight more weeks of physical therapy. (*Id.*).

On July 10, 2014, Dr. Nowotarski noted that over the preceding two months Plaintiff had progressed to full weight bearing rather easily. (R. 523). He noted that Plaintiff could move around well with the cane. (*Id.*). An x-ray taken of Plaintiff's calcaneus showed a healed fracture with excellent alignment. (*Id.*). On a follow-up visit on September 18, 2014, Dr. Nowotarski noted that Plaintiff was able to walk without a limp for short distances with no cane or complaints. (R. 574). During another follow-up exam on February 12, 2015, Dr. Nowotarski noted that Plaintiff was

walking without significant pain and without an assistive device and that she did not require pain medication. (R. 569-70). Dr. Nowotarski instructed Plaintiff that she should continue normal activities without restrictions. (R. 569).

On April 16, 2015, Plaintiff had a follow up visit with Dr. Nowotarski where he noted that she complained of only a little pain in her knee but was much improved and happy with her progress. (R. 567). Dr. Nowotarski told Plaintiff that she had no restrictions and would require no further follow up visits. (R. 568).

Plaintiff returned to Dr. Nowotarski on October 12, 2015, complaining of pain in left femur. (R. 565). On March 10, 2016, Dr. Nowotarski noted that Plaintiff was worse with weight bearing on the left leg. (R. 563). Dr. Nowotarski noted prominent hardware in Plaintiff's left thigh which Plaintiff stated she wanted removed. (*Id.*).

After removal of the prominent hardware on March 29, 2016, Plaintiff visited Dr. Nowotarski on April 14, 2016 and stated that her pain in her thigh and knee had significantly decreased and that she was able to walk without significant discomfort. (R. 561). During this visit, Dr. Nowotarski noted that Plaintiff could be released from his care. (*Id.*).

### III.   ALJ Decision

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. §§ 404.1520(a) and 416.920(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Substantial gainful activity is work done for pay or profit that requires significant physical or mental activities. 20 C.F.R. §§ 404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful activity is generally presumed. 20 C.F.R. §§ 404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages

in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. §§ 404.1520(b) and 416.920(b).

Second, the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equal, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the impairment is not met or is not functionally equivalent, the ALJ will assess the claimant's residual functional capacity ("RFC") to perform, given their impairment, in a work setting. 20 C.F.R. §§ 404.1545(a)(1) and 416.920(a)(1). The RFC is based on medical and other evidence in the record. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). The ALJ makes an assessment about a claimant's RFC using a two-step process that determines: (1) whether there is an underlying medically-determinable impairment that could reasonably be expected to produce the claimant's pain; and (2) the extent to which the claimant's symptoms would limit claimant's functioning. 20 C.F.R. §§ 404.1545(e) and 416.920(e). To determine the limiting effect of the claimant's impairment, the ALJ must consider the credibility of the claimant's statements about their pain in the context of the record. 20 C.F.R. §§ 404.1529(c)(3) and 416.920(c)(3).

Once the ALJ has determined Plaintiff's RFC, the ALJ will consider in step four whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant is found capable of performing past relevant work, then the claimant is not disabled. *Id*. If the claimant is unable to perform past relevant work or has

no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). In the fifth step, the ALJ will determine whether the claimant is able to perform any other work in the national economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Although the claimant must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that the claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(c), 404.1560(c), 416.912(g) and 416.960(c).

Here, the ALJ determined as a threshold requirement that the claimant met the insured status requirements of the Act through September 30, 2017, and that she has not engaged in substantial gainful activity since her alleged onset date of February 4, 2014. Plaintiff's severe impairments are status post motor vehicle collision with right calcaneal fracture, right tibial plateau fracture, right proximal femur fracture, and left femur fracture. (R. 33).

In regards to the third prong, the ALJ determined that Plaintiff's impairment neither met nor equaled Listing 1.02, 1.04 nor 1.06 under the Listings of Impairments, *see* 20 C.F.R. § 404.1520(d). (R. 34). The ALJ noted that "[n]o examining or treating medical source has reported that the claimant has an impairment that medically equals the criteria of a listed impairment." (*Id*.).

At the fourth prong of the sequential analysis, the ALJ completed a RFC assessment. (R. 35). In completing this assessment, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause her reported symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 35-36). Plaintiff has consistently reported pain levels of 2 to 4, which indicate only mild pain. (Ex. 3F, 5F, 10F).

The ALJ determined that the Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b). (R. 35). He gave the following limitations: "[s]he cannot climb ladders, ropes, or scaffolds or perform around work hazards." (*Id*.). He stated "[s]he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl." (*Id*.). Additionally, Plaintiff "will require an option to change from a seated to upright standing/walking posture as frequently as every thirty minutes and can perform work in either posture." (*Id*.). Lastly, the ALJ found that Plaintiff "requires the use of a cane on uneven or rough terrain." (*Id*.).

At the fifth step, the ALJ brought in a VE to testify regarding jobs in the national economy that Plaintiff could perform. (R. 38). The VE determined that an individual of Plaintiff's age (49 years at the time), level of education (high school), amount of work experience, and RFC could not perform Plaintiff's past relevant work. (*Id*.). The ALJ considered that testimony in finding that Plaintiff is unable to perform her past relevant work as a cosmetologist. (*Id*.). Nonetheless, under the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that jobs exist in the national economy that Plaintiff can perform. (R. 39). More specifically, the VE testified that a hypothetical person similar to the claimant could perform work as a laundry worker, marker, and garment sorter, and that there are at least 1,500 such jobs in the state and over 215,000 nationally. (R. 57). Thus, the claimant was found not to be disabled.

## IV. Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Doc. #8 at 25-41). Plaintiff presents several grounds in support of reversal: (1) the Appeals Council failed to review new, material, and chronologically relevant post-hearing submissions; (2) the Appeals Council failed to show that it

adequately evaluated the new evidence in its written denial; (3) the ALJ decision was not based on substantial evidence, particularly when the evidence submitted to the Appeals Council is considered; and (4) the ALJ failed to apply Grid Rule 201.14. (Doc. #8 at 4). Each of these arguments is considered, in turn.

V.     **Standard of Review**

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less that a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## VI. Discussion

For the reasons outlined below, the court finds that the ALJ's findings are supported by substantial evidence and the proper legal standards were applied. Thus, the decision of the ALJ is due to be affirmed.

### A. The Appeals Council Properly Declined Review

Plaintiff alleges that the Appeals Council ("AC") failed to review new, material, and chronologically relevant evidence. (Doc. #8 at 25). More specifically, Plaintiff contends that the AC failed to consider certain medical evidence from Dr. Jarod Warren and Dr. Brian Perry (the "new evidence") which is discussed in more detail below. (Doc. #8 at 2). Plaintiff contends that the new evidence weighs against the ALJ's finding. After careful review, the court disagrees.

#### 1. Substantial Evidence Supports the ALJ's RFC Finding

A claimant's RFC is the most she can do despite her limitations and is based on an evaluation of all relevant record evidence. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 404.1545(a)(3). Here, Plaintiff argues that the new evidence undermines the RFC finding. (Doc. #8 at 38-40). The court first considers whether the ALJ's RFC finding was supported by substantial evidence.

The ALJ is required, absent good cause, to give a treating physician's opinion considerable weight. *See Sharfarz v. Bowen*, 825 F. 2d 278, 279-80 (11th Cir. 1987). The weight given to the opinions of doctors depends on the doctor's examining and treating relationship with the claimant, as well as the supportability and consistency of that opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ may discount a treating doctor's opinion if the doctor failed to provide medical evidence to support his opinion or if the medical opinion is inconsistent with the record as a whole. *See Crawford* 363 F. 3d at 1159 (quoting *Edwards v. Sullivan*, 937 F. 2d 580, 583-84 (11th Cir. 1991)).

Here, the ALJ gave significant weight to the opinions of both Dr. Nowotarski and Dr. Pitts. Dr. Nowotarski was the treating orthopedic surgeon from the alleged onset date through the date of the ALJ's decision. (R. 36,37). After surgery, Dr. Nowotarski noted that Plaintiff exhibited "excellent reduction of the calcaneus" fracture. (R. 36, 279). By May 2014, Dr. Nowotarski reported that Plaintiff had no weight bearing pain in her lower extremity and was able to ambulate with a walker without difficulty. (R. 36, 491). Plaintiff had excellent range of motion in her left knee and hip with no pain. (R. 36, 491). Dr. Nowotarski cleared Plaintiff for full weight bearing on her right leg and moved Plaintiff from a walker to a cane. (R. 36, 491). In July 2014, Dr. Nowotarski reported that Plaintiff progressed to full weight bearing "rather easily." (R. 37, 523). On exam, Dr. Nowotarski reported Plaintiff had equal leg length, no evidence of limping, and she was able to move around "pretty good" with a cane. (R. 37, 523). This objective medical evidence shows that Plaintiff received successful treatment following her accident and provides substantial evidence supporting the RFC finding. (R. 35-38). *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that a claimant's conservative treatment history supports the ALJ's conclusion); *Ybarra v. Comm'r*, 658 Fed. Appx. 538, 540-41 (11th Cir. 2016) (citing the claimant's improvement with treatment as support for the ALJ's decision).

Further supporting his assessment of Plaintiff's RFC, the ALJ considered and gave great weight to the opinion of Dr. Anthony Pitts, the State agency medical consultant. (R. 37-38, 71-73). State agency consultants are experts in Social Security disability programs and their opinions may be entitled to great weight. *See* 20 C.F.R. § 404.1512(b)(6); SSR 17-2p, 2017 WL 3928306. Dr. Pitts independently reviewed the claimant's file in August 2014 and opined that her capacity was consistent with the ALJ's RFC finding. (R. 71-73). The ALJ gave the opinion of Dr. Pitts great weight because of the thorough review of the medical evidence and its consistency with the record

as a whole. (R. 37-38). Therefore, Dr. Pitts's opinion provides additional support for the ALJ's finding.

## 2. The New Evidence

A claimant is permitted to present new evidence at each stage of the administrative process, including before the Appeals Council. *Ingram v. Comm'r*, 496 F. 3d 1253, 1261 (11th Cir. 2007). While the AC has discretion not to review the ALJ's denial of benefits, where it does undertake review, the AC "must consider new, material, and chronologically relevant evidence submitted by the claimant." *Ingram*, 496 F. 3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). That is, new evidence must be reviewed only if it is material and relates to the period on or before the date of the ALJ's hearing decision. *Keeton v. Dep't of Health & Human Servs.*, 21 F. 3d 1064, 1066 (11th Cir. 1994); 20 C.F.R. §404.970(b).

Here, the Appeals Council properly found that the records from Dr. Perry dated July 7, 2016 through August 1, 2016 were not chronologically relevant. (R. 2). These records do not relate back to May 6, 2016 (the date of the ALJ's decision). *See Stone v. Comm'r*, 658 F. App'x 551, 553 (11th Cir. 2016) (holding that the evidence submitted after the ALJ's decision was not chronologically relevant because it did not make an express reference to the claimant's condition "before the ALJ's decision."). However, the records from Dr. Perry dated May 6, 2014 through November 16, 2015 are chronologically relevant and were properly considered and added into the record by the Appeals Council. (R. 6). Yet, they did not change the analysis of the RFC. (R. 582-85, 587-90) (notes indicating that Plaintiff was improving, without ongoing limitations, and doing better overall).

New evidence is material "if there is a reasonable possibility that the new evidence would change the administrative outcome." *Flowers v. Comm'r*, 441 F. App'x 735, 745 (11th Cir. 2011)

(quoting *Hyde v. Bowen*, 823 F. 2d 456, 459 (11th Cir. 1987)). For the reasons stated below, there is no reasonable possibility that the evidence from Dr. Warren would have changed the outcome.

Dr. Warren is a non-treating physician who conducted an evaluation of Plaintiff five months *after* the ALJ rendered his decision. This evaluation did not relate to the relevant period. *See Stone*, 658 F. App'x at 553. Moreover, the new evidence outside the relevant time period is not corroborated by the objective medical evidence gathered during the relevant disability period. In fact, it contradicts it. *See Popham v. Comm'r*, 681 F. App'x 754, 757-59 (11th Cir. 2017) (holding that the AC properly declined review because an opinion was inconsistent with medical evidence from the time period in front of the ALJ); *Shaw v. Astrue*, 392 F. App'x 684, 6886-87 (11th Cir. 2010) (finding an ALJ"s failure to mention every finding in a consultative opinion was harmless error). Both Dr. Nowotarski and Mr. Pitts evaluated Plaintiff during the relevant period and found that she was healing very well and could bear weight with no pain. (R. 64-74, 313, 523). Importantly, the ALJ found that the evaluation by Dr. Pitts conformed to the entirety of the record which actually reflects the Plaintiff's status during the relevant disability period. (R. 37, 38).

Because Dr. Warren's assessment occurred well after the fact and is, at best, premised on entirely changed circumstances, the consultative exam and opinion did not merit remand. *See Green v. Comm'r*, 695 F. App'x 516, 518-19 (11th Cir. 2017) (holding that the AC properly declined review because subsequent treatment notes were not chronologically relevant, the treating doctor did not specifically state that the condition in the treatment notes existed prior to the ALJ's decision, and the physician did not indicate that his notes were based on a review of the claimant's prior medical records).

### 3. Adequate Evaluation of New Evidence in Written Denial

If the Appeals Council determines that the new evidence does not render the denial erroneous (as was the case here), the Council must show in its written denial that it has adequately evaluated the evidence. *Flowers*, 441 F. App'x at 745 (citing *Epps v. Harris*, 624 F. 2d 1267, 1273 (5th Cir. 1980)). However, the Eleventh Circuit has stated that "the Appeals Council is not required to make specific findings of fact when it denies review." *Parks ex. Rel. D.P. v. Comm'r*, 783 F.3d 847, 853 (11th Cir. 2005); *see also Mitchell v. Comm'r*, 771 F.3d 780, 783 (11th Cir. 2014) (holding that there is no requirement that "the Appeals Council … provide a detailed discussion of a claimant's evidence when denying a request for review"); *Burgin v. Comm'r*, 420 F. App'x 901, 903 (11th Cir. 2011) (holding that "because a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review."). All that is required is that the Appeals Council show in writing that it did evaluate the evidence and denied review. *See Ingram,* 496 F. 3d at 1262. This the Council did here. The AC did not decline to consider the evidence, but rather listed Dr. Perry's reports as irrelevant to the time period and mentioned Dr. Warren's evaluation as unsupported by the record. (R. 2, 6). Accordingly, Plaintiff's argument regarding the written denial is without merit.

### B. The ALJ Properly Relied on the Testimony of the VE to Find Plaintiff Could Perform Other Work, and was Now Required to Apply the Grid Rule

Because the ALJ found at step four that Plaintiff could not perform her past relevant work, the ALJ had to determine at the fifth and final step whether Plaintiff could perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). Plaintiff argues that the ALJ improperly failed to apply Grid Rule 201.14 for individuals closely approaching advanced age at this step. (Doc. #8 at 40, 41). For the reasons explained below, this argument fails.

The ALJ has two avenues to determine whether a claimant is able to adjust to other work in the national economy. *See Philips v. Barnhart*, 357 F. 3d 1232, 1239. The ALJ may apply the Medical Vocational Guidelines, or Grids, found in 20 C.F.R. § 404, subpart P, appendix 2. Alternatively, the ALJ may consult a VE by posing hypothetical questions to establish whether someone with the claimant's impairments would be able to find employment. *Id.* at 1239-40. Here, the ALJ did both. (R. 35).

The grids provide tables based on work classifications in consideration with vocational factors such as age, education, and work experience, to "direct a conclusion" of either disabled or not disabled. *See* SSR 83-10; *see generally*, 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). These tables give notice as to the number of unskilled jobs that exist in the national economy at the various exertional levels. Thus, when all of the claimant's vocational factors fall into the criteria in the table, "the existence of jobs is established." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b).

However, "[e]xclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F. 2d 1562, 1566 (11th Cir. 1985); *see Philips*, 357 F. 3d at 1242. In these situations, the ALJ must make an individualized assessment and consult a VE to determine if there are jobs in the economy that the claimant can perform. *See Id*. at 1242-43. When the ALJ cannot rely solely on the grids, the ALJ nonetheless "may use [the grids] as a framework to evaluate vocational factors . . ." *Wilson*, 284 F. 3d at 1227. That is what occurred here.

The ALJ first reviewed grids 202.14 and 202.21 as they most closely correspond with Plaintiff's vocational characteristics. (R. 39). Specifically, Plaintiff was an individual closely approaching advanced age (50 to 54 years of age) with a high school education, light, skilled past

work experience, and an RFC for light work. (R. 35, 38). However, the ALJ recognized that Plaintiff had additional limitations that precluded the strict application of the grids and could only use the grids as a framework for his decision. (R. 39). *See* 20 C.F.R. §§ 404.1596, 416.969. Thus, the ALJ obtained testimony from a VE to help determine whether other work exists. (R. 39, 55-59). In response to the ALJ's hypothetical question, the VE identified jobs that an individual with Plaintiff's RFC and vocational characteristics could perform, including three light work positions. (R. 56-58). The VE's testimony, therefore, provides substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled. (R. 39-40).

Plaintiff further contends that the ALJ should have applied Grid Rule 201.14. (Pl.'s Mem., Doc. #8 at 40). However, Grid Rule 201.14 involves an RFC for sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1, § 201.14. Here, as the ALJ determined, Plaintiff retained the RFC to perform a reduced range of *light* work. (R. 35, 39, 55-58). Specifically, the ALJ found that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, which is in excess of the minimal lifting and carrying requirements of light work. (R. 35). *See* 20 C.F.R. § 404.1567(a), (b). Because of that, Plaintiff's exertional capacity fell between sedentary work and light work. *See Smith v.* Asture, No. 3:10cv641-WC, 2011 WL 2650588, at *5 (M.D. Ala. July 6, 2011). Therefore, the ALJ could not solely rely on the Grid Rules and appropriately called in a VE.

For these reasons discussed above, Plaintiff has failed to demonstrate that the RFC for light work with additional limitations was erroneous.

**VII.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.

The Commissioner's final decision is due to be affirmed and the pending motion is due to be denied. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 26, 2019.

*/s/ R. David Proctor*
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE